Brian M. Taddonio (BT-1409)
btaddonio@dcpatent.com
DITTHAVONG & STEINER, P.C.
379 West Broadway, Suite 212
New York, New York 10012
(212) 203-4809

Jeffrey H. Greger (VSB 41500)
jhgreger@jeffreyhgregerpc.com
Jeffrey H. Greger, PC
5006 Kenerson Dr.
Fairfax, VA 22032
(571) 331-4949

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

───────────────────────────────────

JR APPAREL WORLD LLC,

                Plaintiff,                        Civil Action No.

                v.

BLUESTEM BRANDS, INC., and
HABAND COMPANY LLC,

                Defendants.

───────────────────────────────────

## COMPLAINT AND JURY DEMAND

       Plaintiff JR Apparel World LLC ("JR Apparel"), by and through its undersigned

counsel, pursuant to title 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), New York State Unfair

Trade Practices, and New York common law, hereby asserts claims of federal trademark

infringement, federal unfair competition, federal dilution, unfair trade and deceptive business

practices, and common law violations against Bluestem Brands, Inc. ("Bluestem") and Haband

Company, Inc. ("Haband"), (jointly and severally referred to as "Defendants").

Plaintiff seeks: (1) injunctive relief against Defendants' unauthorized uses and exploitation of Plaintiff's trademark rights; and (2) damages arising from Defendants' past and present acts of infringement and unfair practices in violation of the Lanham Act, New York State Unfair Trade Practices, and New York common law.

## PARTIES

1.      Plaintiff is a New York limited liability corporation with its principal place of business at P.O. Box 846, Syosset, New York 11791.

2.      Upon information and belief, Co-Defendant Bluestem is a Delaware corporation with its principal places of business at D.

3.      Upon information and belief, Co-Defendant Haband is a Delaware corporation with a its principal place of business at 110 Bauer Driver, Oakland, New Jersey 07436.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the claims arising the under the law of New York pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants have (a) marketed, distributed, offered for sale, and/or sold to persons within the State of New York; (b) regularly transact and conduct business within the State of New York; and (c) have otherwise made or established contacts with the State of New York sufficient to permit the Court to exercise personal jurisdiction over the defendants.

6.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because substantial events and property subject to this action are in this district and Defendants'

conduct commercial business activities in this district and direct commercial activity to consumers in this district and the State of New York.

**JR APPAREL'S BUSINESS AND ICONIC RACER JACKET TRADE DRESS**

7.    In 1975, JR Apparel's predecessor, International Trends, LTD. ("International Trends"), founded the world-famous brand MEMBERS ONLY and introduced the brand to the American markets in 1980.

8.    In February 28, 1978, International Trends matured a use-based trademark application and the U.S. Patent and Trademark Office (USPTO) issued U.S. Registration No. 1086489 for the mark MEMBERS ONLY covering clothing apparel, in the pertinent part jackets and coats (the '489 Registration). The '489 registration has been renewed and is incontestable.

9.    Plaintiff JR Apparel is a successor in interest to International Trends and JR Apparel is the current owner of the '489 registration.

10.    JR Apparel is also the owner of U.S. Reg. No. 3915373 (the '373 registration) for the mark MEMBERS ONLY covering additional clothing apparel other than jackets. The '373 registration was issued by the USPTO on the Principal Register, is renewed and incontestable.

11.    JR Apparel is also the owner U.S. Trademark Reg. No. 5,362,839 for the distinctive product design of a label as affixed to a jacket and the registration covers in the pertinent part clothing apparel, namely jackets (the '839 registration). The '839 registration was issued by USPTO on the Principal Register.

12.    The MEMBERS ONLY brand has generated in excess of $250 million in sales since its inception and a key component of that commercial success is derived from the popularity and sales of the Iconic Racer Jacket, an example of which is depicted below shown front and back.



13.    The Iconic Racer Jacket features a distinctive appearance, including a double snap throat latch, shoulder epaulets, a knitted band pocket on the left breast of the wearer, a label affixed below the knitted band, a defined stitching forming a vest-like silhouette, knitted waist pockets, knitted waist and sleeve ends, a kissing zipper, and a defined stitching running the length of the back center of each sleeve.  The combination of these elements, viewed as whole, creates a product configuration trade dress as pictured below (hereinafter referred to as "the trade dress" or "MARK").





14.     In 2007, Members Only Licensing Group LLC ("Members Only Licensing"), acquired the MEMBERS ONLY brand, trademarks, trade dress, and associated goodwill of the MEMBERS ONLY trademark and the associated trade dress, from JR Apparel's predecessors in interest.

15.     In 2012, JR Apparel acquired the MEMBERS ONLY brand, trademarks, trade dress, and associated goodwill from Members Only Licensing and JR Apparel has been offering for sale and selling the Iconic Racer Jacket comprising the Iconic Racer Jacket MARK continuously and substantially exclusively since that time.

16.     Since introducing the Iconic Racer Jacket over 30 years ago, JR Apparel and its predecessors have spent millions of dollars advertising and promoting the Iconic Racer Jacket to

the general public and millions of units have been sold over that time resulting in millions of dollars of sales revenues.

17.     JR Apparel's Iconic Racer Jacket is sold throughout the United States through a wide variety of different trade channels including department stores, online retailers, and specialty stores.

18.     JR Apparel's Iconic Racer Jacket has been embraced by the entertainment industry's celebrities and stars.  The Iconic Racer Jacket has adorned the stars having appeared in contemporary and popular television shows including but not limited to *Saturday Night Live*, *Big Bang Theory*, and *The Walking Dead*; in commercials including during the Super Bowl; in movies including movie stars wearing the Iconic Racer Jacket such as Will Smith in *Pursuit of Happiness*, Justin Timberlake in *The Love Guru*, Will Ferrell in *The Other Guys*, Drake in *Anchorman 2*, and Jon Voight in *Ray Donavan*; and the Iconic Racer Jacket has been worn and popularized by a wide variety of past and present entertainers and celebrities including Frank Sinatra, Freddie Mercury, Robert De Niro, Billy Joel, Anne Hathaway, Patrick Stewart, Andersen Cooper, Zac Efron, Jordon Sparks, Justin Bieber, Jessica Alba, and many others too numerous to list.

19.     JR Apparel's Iconic Racer Jacket has been widely promoted through JR Apparel's website www.membersonly.com and in its social media promotions.

20.     As a result of a long, continuous and extensive use and promotion of JR Apparel's Iconic Racer Jacket, the jacket and its trade dress enjoy nationwide public recognition.

21.     JR Apparel's Iconic Racer Jacket is one of the most recognizable jackets in recent history.

22.     Consumers have come to associate the Iconic Racer Jacket MARK with the brand MEMBERS ONLY and as such the Iconic Racer Jacket MARK has acquired tremendous goodwill and secondary meaning among consumers, both retailers and the general public, which recognize the Iconic Racer Jacket MARK as exclusively associated with the brand MEMBERS ONLY and its owner, JR Apparel.

23.     The combination of elements comprising the Iconic Racer Jacket MARK is non-functional; the combined elements are not essential to the use or the purpose of the jacket; it does not reduce the cost or improve the performance of the jacket; and its use by JR Apparel and its predecessors have not put competitors at any significant non-reputation-related disadvantage.

24.     Competitors in the field of making jackets have a panoply of alternative jacket design options at their disposal.

25.     Defendants' adoption of the Iconic Racer Jacket MARK is a deliberate attempt to trade off the significant goodwill built from sales and recognition of the Iconic Racer Jacket MARK.

26.     JR Apparel's Iconic Racer Jacket MARK is famous among the general consuming public and has enjoyed such fame since long prior to Defendants' infringing acts complained of herein.

27.     On March 26, 2019, pursuant to 15 U.S.C. § 1052(f), the USPTO granted JR Apparel U.S. No. 5,709,394 for the Iconic Racer Jacket Mark covering men's, women's and children's jackets (the '394 Registration).  The Registration was placed on the Principal Register. A copy of the '394 registration is attached as Exhibit A.  The mark as registered appears below.



28.     Pursuant to 15 U.S.C. § 1115(a), JR Apparel's registration of the Iconic Racer

Jacket MARK constitutes *prima facie* evidence of the validity of the Iconic Racer Jacket MARK;

of JR Apparel's ownership of the Iconic Racer Jacket MARK; and of JR Apparel's exclusive

right to use the Iconic Racer Jacket MARK.

29.     JR Apparel also has common law trademark rights in the Iconic Racer Jacket

MARK by virtue of its longstanding and well-recognized use in commerce in New York and

throughout the United States.

**DEFENDANTS' UNLAWFUL CONDUCT**

30.     Upon information and belief, Co-Defendant Bluestem is the parent company to

various eCommerce retail brands including Co-Defendant Haband and financially benefits from

products and brands offered for sale and sold by Co-Defendant Haband.

31.     Upon information and belief, Defendants' design and manufacture clothes and

wearing apparel and market clothes and apparel and accessory items for women and men through

the website www.haband.com.

32.     Since prior to 2016, Co-Defendant Haband was purchasing wholesale,

advertising, and selling by retail, the genuine MEMBERS ONLY branded Iconic Racer Jacket.

33.    Upon information and belief, sometime around 2016 or a few years prior thereto, Defendants decided to manufacture and to sell a jacket that was deliberately designed to imitate JR Apparel's famous Iconic Racer Jacket MARK.

34.    JR Apparel discovered that Haband, without authorization from JR Apparel, was manufacturing and selling an imitation jacket using the product name Rain or Shine Jacket (hereinafter the Haband "Rain or Shine Jacket" is referred to as the "Knock-Off").  Defendants' Knock-Off jacket (shown front and back) is depicted below:



Haband is currently offering for sale and selling the Knock-Off through its website, as illustrated by an image capture on June 5, 2019 from the relevant page of the Haband website:



35.     The Product Description of the Knock-Off describes the jacket as having "a quick-zipping front! Also sports epaulets, snap-tab detail under the collar, plus soft knit details at neck, cuffs and hem."

36.     The comparison below of the authentic Iconic Racer Jacket (top) and the Knock-Off (bottom) underscores how slavishly Defendants copied JR Apparel's Iconic Racer Jacket MARK.  The Knock-Off imitates the combination of elements of the Iconic Racer Jacket MARK.



37.     Defendants' intent in offering for sale and selling a confusingly similar imitation of the JR Apparel's Iconic Racer Jacket is manifest by the fact that the Defendants' Knock-Off has been sold on the Haband website in connection with the phrase "Welcome to the Club," insinuating a members only club nexus.

38.     Defendants sell their Knock-Off at a fraction of the cost of the genuine Iconic Racer Jacket.

39.     Neither JR Apparel nor any predecessor in interest has ever given Bluestem or Haband permission to manufacture, offer for sale, or sell a jacket which is an imitation or slavish copy of the distinctive Iconic Racer Jacket and the distinctive trade dress associated therewith.

40.     On April 4, 2018, the undersigned counsel sent a cease and desist letter to Mr. Anthony Delgaudio, the president of Haband alleging that Haband's offing for sale and sales of the Knock-Off is likely to cause confusion, or to cause mistake, or to deceive consumers by suggesting a connection and/or association between Haband and the MEMBERS ONLY brand and that Haband's offering for sale and selling of a virtual copy of the Iconic Racer Jacket evidences Haband's intent to deliberately trade on the goodwill and superior reputation which JR Apparel and its predecessors have cultivated at considerable effort and expense over more than a 40 year span.

41.     On May 10, 2018, Bluestem's counsel responded to the April 4th cease and desist letter by refusing to discontinue selling the Knock-Off and said counsel claimed that JR Apparel did not own formal trademark registration rights for the Iconic Racer Jacket MARK.

42.     Despite JR Apparel's cease and desist letter to Defendants, Defendants knowingly and willfully continue to infringe JR Apparel's common law trademark rights and now federally registered trade dress rights and continue to dilute the distinctiveness of the JR Apparel's Iconic Racer Jacket MARK.

43.     Defendants' aforesaid acts have caused and unless enjoined, will continue to cause irreparable damage and injury to JR Apparel, for which JR Apparel has no adequate remedy at law.

44.     Defendants misappropriation is particularly damaging because consumers are complaining about the defects of Defendants' Knock-Off, which is manifest and appears

currently in the Customer Reviews section of Haband's own online retail website as appears

below referencing shoddy construction and poor service.



https://www.haband.com/p/rain-or-shine-

jacket?id=5beb8139423442f48420b3dff49935aa&readReviews=true#

**CLAIMS FOR RELIEF**

**CLAIM I**
**TRADEMARK INFRINGEMENT OF A FEDERALLY REGISTERED TRADE DRESS**

45.     JR Apparel repeats and realleges the allegations of paragraphs 1 through 44 as if

set forth herein.

46.     JR Apparel commenced use of its Iconic Racer Jacket MARK long before

Defendants' adopted and commenced use of Defendants' Knock-Off jacket and long after JR

Apparel's Iconic Racer Jacket MARK acquired distinctiveness.

47.     JR Apparel is the senior-in-time user of the trade dress and MARK as registered

and depicted in the '394 Registration.

48.     Defendants' conduct as set forth above is likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association, or sponsorship of Defendants' Knock-Off jacket and to falsely mislead consumers into believing that Defendants' Knock-Off jacket originates from, is affiliated or connected with, or approved by, JR Apparel.

49.     Defendants' activities constitute an infringement of JR Apparel's rights afforded by the '394 registration, in violation of the Lanham Act, 15 U.S.C. § 1114.

50.     Defendants' acts of infringement have caused injury to JR Apparel.

51.     Defendants, despite having been put on notice, continue to engage in the complained of activities knowingly and willfully, so as to justify the assessment of treble damages and attorneys' fees under 15 U.S.C. § 1117.

52.     Defendants' acts of infringement, if continued, and if not enjoined, will continue to cause JR Apparel to sustain irreparable injury, for which it has no adequate remedy at law.

## CLAIM II
## FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a)(1)(A))

53.     JR Apparel repeats and realleges the allegations in paragraphs 1 through 52 as if set forth herein.

54.     Defendants' conduct as set forth above is likely to cause confusion, mistake, or deception as to the source, origin, or sponsorship of Defendants' goods, or to falsely mislead consumers into believing that Defendants' goods originate from, are affiliated or connected with, or are approved by, JR Apparel.

55.     Defendants' activities complained of herein violate JR Apparel's rights pursuant to 15 U.S.C. § 1125(a).

56.     Defendants' acts of infringement, false designations of origin, and unfair competition have caused injury to JR Apparel.

57. Defendants, despite having been put on notice, continue to engage in the complained of activities knowingly and willfully, so as to justify the assessment of treble damages and attorneys' fees under 15 U.S.C. § 1117.

58. Defendants' acts of unfair competition, if continued, and if not enjoined, will continue to cause JR Apparel to sustain irreparable damage and injury, for which it has no adequate remedy at law.

**CLAIM III**
**FEDERAL TRADE DRESS DILUTION**

59. JR Apparel repeats and realleges the allegations of paragraphs 1 through 58 as if set forth herein.

60. JR Apparel is the owner of Iconic Racer Jacket MARK, which is distinctive and famous among the general consuming public in the United States and became famous since long before Defendants engaged in the activities complained of herein.

61. Defendants have caused a deliberate and explicit false association between the Knock-Off and the genuine Iconic Racer Jacket in a fashion that impairs the distinctiveness of the genuine JR Apparel Iconic Racer Jacket MARK.

62. Defendants' activities as set forth above are likely to dilute, impair, tarnish and blur JR Apparel's famous Iconic Racer Jacket MARK in violation of 15 U.S.C. § 1125(c).

63. Defendants' acts of dilution have caused injury to JR Apparel.

64. Upon information and belief, Defendants despite having been put on notice, continue to engage in these activities willfully and in bad faith, so as to justify the assessment of treble damages and attorneys' fees under 15 U.S.C. § 1117.

65. Defendants' acts have caused substantial and irreparable damage and injury to JR Apparel and in particular to its valuable goodwill and the distinctive quality of its famous Iconic

Racer Jacket MARK and, if continued, and if not enjoined, will continue to cause substantial and irreparable damage and injury to JR Apparel for which it has no adequate remedy of law.

## CLAIM IV
## <u>VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 360-L</u>

66.     JR Apparel repeats and realleges the allegations of paragraphs 1 through 65 as if set forth herein.

67.     Defendants' knowingly and in bad faith activities have been and, if continued, are likely to injure JR Apparel's business reputation and dilute the distinctive quality of JR Apparel's Iconic Racer Jacket MARK, in violation of JR Apparel's rights under New York General Business Law § 360-L.

68.     Defendants' violations of New York General Business Law § 360-L have caused injury to JR Apparel.

69.     Defendants' violations of New York General Business Law § 360-L have caused, and if not enjoined, will continue to cause JR Apparel to sustain irreparable harm, for which JR Apparel has no adequate remedy at law.

## CLAIM V
## <u>COMMON LAW TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION</u>

70.     JR Apparel repeats and realleges the allegations of paragraphs 1 through 69 as if set forth herein.

71.     Defendants' uses of JR Apparel's Iconic Racer Jacket MARK, are misleading and unlawful as they are likely to deceive consumers by creating a false impression that Defendants' Knock Off jacket is affiliated with made by JR Apparel and therefore constitute unfair competition under New York State common law.

72.     Defendants' aforesaid violations of New York State common law have caused injury to JR Apparel.

73.     Defendants' aforesaid violations of New York State common law, if continued and not enjoined, will continue to cause JR Apparel to sustain irreparable damage and injury, for which it has no adequate remedy at law.

74.     As a direct and proximate result of Defendants' knowingly bad faith actions, JR Apparel has suffered  damages in an amount to be determined at trial and, unless Defendants are restrained, JR Apparel will continue to suffer damage and irreparable damage.

## PRAYER FOR RELIEF

WHEREFORE, JR Apparel demands judgment against Bluestem and Haband as follows:

A.     That Bluestem and Haband and their respective affiliates including, but not limited to Bluestems and Haband, officers, agents, servants, employees, successors, and assigns, and all persons in active concert or participation with them who receive actual notice of the injunction order, by personal service or otherwise, be enjoined, preliminarily and permanently, from:

1.     Any manufacture, production, sale, import, export, distribution, advertisement, promotion, display, or other exploitation of the Knock-Off jacket;

2.     Use of JR Apparel's Iconic Racer Jacket MARK or any other copy, reproduction, colorable imitation, or simulation of JR Apparel's Iconic Racer Jacket MARK;

3.     Committing any other acts that infringe or dilute JR Apparel's Iconic Racer Jacket MARK or unfairly compete with JR Apparel; and

4. Committing any other acts calculated or likely to cause consumers to believe that Defendants or their goods or services are in any manner connected, affiliated, or associated with or sponsored or approved by JR Apparel.

B. Pursuant to 15 U.S.C. § 1118, that Defendants deliver to JR Apparel for destruction all units of the Knock-Off jacket and all materials (including without limitation all tangible advertisements, promotional materials, brochures, signs, displays, packaging, labels, and/or website materials) within its possession, custody or reasonable control, either directly or indirectly, that display or incorporate images of the Knock-Off jacket;

C. Pursuant to 15 U.S.C. § 1116, that Defendants file with the Court and serve on the undersigned counsel within thirty (30) days after the entry of final judgment, a report in writing and under oath setting forth in detail the manner and form in which they have complied with paragraphs A and B above;

D. Pursuant to 15 U.S.C. § 1117(a), that Defendants be directed to account to JR Apparel for all gains, profits, and advantages derived from sales of the Knock-Off jacket;

E. Pursuant to 15 U.S.C. § 1117(a), that JR Apparel recover from Defendants three times the amount of its profits flowing from the infringement and dilution of the Iconic Racer Jacket MARK;

F. Pursuant to 15 U.S.C. § 1117(a), that JR Apparel recover from Defendants its reasonable attorneys' fees and costs in this action;

G. That JR Apparel recover prejudgment interest; and

H. That JR Apparel be awarded such other and further relief as the Court may deem equitable and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, JR Apparel hereby demands trial by jury on all issues so triable.

Dated: New York, New York
July 16, 2019

Respectfully submitted,

DITTHAVONG & STEINER, P.C.

By: ___s/ Brian M. Taddonio_____
Brian M. Taddonio (BT-1409)
btaddonio@dcpatent.com
379 West Broadway, Suite 212
New York, New York 10012
(212) 203-4809

Jeffrey H. Greger (VSB 41500)
jhgreger@jeffreyhgregerpc.com
Jeffrey H Greger, PC
5006 Kenerson Dr.
Fairfax, Virginia 22032
*571-331-4949*
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served via the Court's CM-ECF system on July 16, 2019.

Dated: New York, New York

Respectfully submitted,

DITTHAVONG & STEINER, P.C.

By: _____ s/ Brian M. Taddonio _____
Brian M. Taddonio (BT-1409)
btaddonio@dcpatent.com
379 West Broadway, Suite 212
New York, New York 10012
(212) 203-4809

# EXHIBIT A

# United States of America
## United States Patent and Trademark Office



**Reg. No. 5,709,394**

**Registered Mar. 26, 2019**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

JR Apparel World LLC  (NEW YORK LIMITED LIABILITY COMPANY)
P.o. Box 846
Syosset, NEW YORK 11791

CLASS 25: Men's, Women's and Children's Jackets

FIRST USE 1-1-1979; IN COMMERCE 1-1-1979

The mark consists of a double snap throat latch, shoulder epaulets, a knitted band pocket on the left breast of the wearer, a label affixed below the knitted band, a defined stitching forming a vest-like silhouette, knitted waist pockets, knitted waist and sleeve ends, a kissing zipper, and a defined stitching running the length of the back center of each sleeve. The dotted portion of the mark is meant to show placement and is not claimed as a feature of the mark.

SEC.2(F)

SER. NO. 88-068,758, FILED 08-07-2018

Director of the United States
Patent and Trademark Office